UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| DONALD S. JOHNSON, | : | |
| --- | --- | --- |
| Plaintiff, | : | Civil Action No.: 15-1465 (RC) |
| v. | : | Re Document No.: 13 |
| ROBERT M. LIGHTFOOT,[1] Administrator, National Aeronautics and Space Administration | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Donald S. Johnson brings this action against Defendant Robert M. Lightfoot, administrator of the National Aeronautics and Space Administration ("NASA"), for discrimination under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 633a; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended; 42 U.S.C. § 2000e *et seq.*; and the Equal Pay Act of 1963 ("EPA"), as amended, 29 U.S.C. § 206(d). Mr. Johnson alleges that NASA refused to promote him and denied him equal pay for both discriminatory and retaliatory reasons. NASA now moves for summary judgment. *See* Def.'s Mot. Summ. J., ECF No. 13. For the reasons stated below, the Court finds that NASA is entitled to summary judgment on Mr. Johnson's ADEA and Title VII claims because Mr. Johnson has not rebutted NASA's performance-based reasons for not promoting him. The Court also finds

---

[1] Pursuant to Rule 25(d) of the Federal Rule of Civil Procedure, Robert M. Lightfoot is current the Administrator for the National Aeronautics and Space Administration and is automatically substituted as the sole defendant.

that it lacks subject-matter jurisdiction over Mr. Johnson's EPA claim and therefore dismisses it without prejudice.

## II. BACKGROUND

Mr. Johnson is an African-American man who was born in 1947. Def.'s Statement Material Facts to Which There is No Genuine Dispute ("Def.'s Statement Facts") ¶ 1, ECF No. 13-2. He "began working for NASA on March 8, 1999, as a GS-13 Equal Employment Opportunity [('EEO')] Specialist within NASA's Complaint's Management Division of the Office of Diversity and Equal Opportunity ('CMD')." *Id.* ¶ 2. During his time at NASA, Mr. Johnson never received a promotion to GS-14 and ultimately retired on December 31, 2010 at the same GS-13 level at which he started. *Id.* ¶¶ 3–4, 18.

In 2008, CMD announced that two identical EEO Specialist positions were available as career ladder GS-13/14 positions. *Id.* ¶ 20. Mr. Johnson and Aisha Moore, a woman who was under forty years old and had no prior EEO activity, both applied for the positions. *Id.* ¶¶ 14, 21; Moore Notification of Personnel Action, ECF No. 13-9. However, after Mr. Johnson and Ms. Moore applied, it became apparent that the positions "were incorrectly advertised as GS-13/14 positions," and the "announcement should have stated that there was potential to be promoted to the GS-14 grade level." Brenda Manuel Aff. ("Manuel Aff.") ¶ 9, ECF No. 13-7. Thus, "the vacant positions were revised and re-advertised as . . . GS-13 [positions] with potential for advancement to GS-14 status." Def.'s Statement Facts ¶ 22. Ultimately, both Mr. Johnson and Ms. Moore were selected to fill these revised positions. *Id.* ¶ 25. But shortly thereafter, Ms. Moore also received a promotion to GS-14. *Id.* ¶ 27. As EEO Specialists, both Mr. Johnson's and Ms. Moore's "work responsibilities included managing EEO cases, writing Final Agency Decisions ('FADs'), overseeing the work of junior EEO Specialists, drafting acceptance or

dismissal letters in response to EEO complaints, and working with NASA's Office of the General Counsel." *Id.* ¶¶ 6, 15; Linda Jackson Aff. ("Jackson Aff.") ¶ 8, ECF No. 13-5.

Though Mr. Johnson and Ms. Moore maintained similar work responsibilities, *see* Def.'s Statement Facts ¶¶ 6, 15, they performed at disparate levels. Ms. Moore "completed several additional office-wide projects, including[:] updating the office website, contributing articles to the ODEO Endeavor newsletter, editing articles, providing analyses of new court cases, helping develop NASA's anti-harassment procedures, managing the 'I complaints' tracking system, and creating draft FAD templates to produce uniformity in office-wide work product" in addition to "completing the same tasks that [Mr.] Johnson completed." *Id.* ¶ 36. Moreover, during this time period "Ms. Moore's work product required significantly fewer corrections and did not warrant the same level of supervision that [Mr.] Johnson's work required." *Id.* ¶ 35.

Mr. Johnson, on the other hand, "routinely received performance reviews identifying the need for improved written skills and timeliness." *Id.* ¶ 28. Indeed, Mr. Johnson had many "written submissions . . . returned with numerous errors identified." *Id.* ¶ 29. In some cases, Mr. Johnson failed to complete assignments at all, such as the "Contingent Worker Desk Guide" which had been assigned to him in 2008. *Id.* ¶ 30. Mr. Johnson's supervisors also noted that "he needed to improve his written work as well as the timeliness of his submissions" in both 2009 and 2010. *Id.* ¶¶ 31–32. Mr. Johnson made these types of errors repeatedly and those errors persisted even after they were pointed out to him. *See* Jackson Aff. ¶ 10. Mr. Johnson even attended a legal writing course and proofreading training, but his errors continued. *Id.* ¶ 12. Thus, Mr. Johnson's supervisor "informed [Mr.] Johnson that he was not being promoted on account of his unexceptional work performance and that [Mr. Johnson] was therefore aware of the reasons preventing his promotion." Def.'s Statement Facts ¶ 33.

On December 8, 2010, Mr. Johnson "contacted a NASA EEO counselor to lodge his complaints of non-promotion and unequal pay." *Id.* ¶ 16; *see also* EO Counselor's Report ¶ 3, ECF No. 13-10. Following that contact, Mr. Johnson filed a formal complaint on March 23, 2011. EEO Complaint of Discrimination ("EEO Compl."), ECF No. 13-3. Mr. Johnson's complaint alleged that from September 28, 2008, through December 31, 2010, he faced discrimination because of his age, sex, and race, and also claimed that he was subjected to retaliation for "filing a prior [discrimination] complaint."[2] *Id.* Mr. Johnson asserted "that the discrimination and retaliation took the form of non-promotions and unequal compensation" because he was paid less than his female colleagues. Def.'s Statement Facts ¶ 19; Def.'s Mem. at 3–4; *see also* EEO Compl. The Equal Employment Opportunity Commission ("EEOC") granted summary judgment for NASA on both claims, finding that NASA had shown legitimate, non-discriminatory, non-retaliatory reasons sufficient to defeat Mr. Johnson's claims. EEOC Decision at 5, ECF No. 13-12. Furthermore, the EEOC ruled that Mr. Johnson's EPA claim failed because he failed to show that he received "less pay for the same work." *Id.* (internal quotations omitted).

On September 8, 2015, Mr. Johnson filed the present action seeking relief under the ADEA, Title VII, and the EPA. Mr. Johnson contends that NASA denied him a promotion and subjected him to disparate pay because of his sex, age, and as a reprisal for previously filing an informal EEO complaint. Compl. ¶¶ 36–48. Among other relief, Mr. Johnson seeks "back pay, wages, and benefits in an amount to be shown at trial." Compl. at 8. Although Mr. Johnson does

---

[2] In 2005, Mr. Johnson and his co-worker Donald King "filed companion formal complaints of discrimination and retaliation against NASA." Compl. ¶ 11, ECF No. 1. In 2008, Mr. Johnson and Mr. King "filed separate but companion lawsuits against NASA in this Court alleging discrimination and retaliation." *Id.* ¶ 12.

4

not seek damages in an amount sum certain, he does allege that "the amount in controversy exceeds $10,000." Compl ¶ 3.

On October 17, 2016, NASA moved for summary judgment on all of Mr. Johnson's claims. *See generally* Def.'s Mot. Summ. J., ECF No. 13. Mr. Johnson was to file his opposition on or before November 16, 2016, *see* Minute Order (Sept. 12, 2016), yet no opposition was filed on that date. Two days later, the Court received a consent motion for an extension of time *nunc pro tunc*. *See generally* Pl.'s Consent Mot. Extension Time, *Nunc Pro Tunc*, ECF No. 14. The Court granted the motion, ordering that Mr. Johnson file his opposition on or before January 30, 2017. *See* Minute Order (Nov. 18, 2016). But that date, too, came and went without any opposition. Thus, the Court ordered that the parties submit a joint status report. *See* Minute Order (Feb. 1, 2017). The parties' status report indicated that Mr. Johnson would file a consent motion on February 6, 2017, which would ask this Court to allow Mr. Johnson until March 3, 2017 to file his opposition. Joint Status Report ¶ 2, ECF No. 17. But no such motion was ever filed. Nonetheless, the Court graciously deemed the request in the Joint Status Report to be a motion for extension of time and ordered that Mr. Johnson file his opposition by March 3, 2017. Minute Order (Feb. 13, 2017). But on that date, instead of filing an opposition, Mr. Johnson filed yet another consent motion for extension of time, *nunc pro tunc*, now asking that the Court allow him to file his opposition by March 30, 2017. Pl.'s Consent Mot. Extension Time, *Nunc Pro Tunc*, ECF No. 18. The Court reluctantly granted the motion. Minute Order (Mar. 6, 2017). However, Mr. Johnson *again* failed to file an opposition or any other document with the Court. Accordingly, the Court ordered that the parties appear for a status conference to discuss Mr. Johnson's persistent failure to meet the repeatedly extended deadline. *See* Minute Order (Apr. 19, 2017). The Court specifically required the attendance of Mr. Johnson to ensure that he was

aware of his counsel's failure to file a timely opposition. Following that status conference, the Court gave Mr. Johnson one final extension of time to file a response to Defendant's motion—until May 29, 2017. Minute Order (May 8, 2017). But no such opposition or any other filing from Mr. Johnson was forthcoming. Now, more than nine months after NASA initially filed its motion for summary judgment, having granted Mr. Johnson four extensions, and having held a status conference specifically to address the issue, the Court has still received no opposition or other response from Mr. Johnson. The Court will wait no longer for Mr. Johnson to address the motion.

### III. LEGAL STANDARD

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475

F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

The D.C. Circuit has held that a "motion for summary judgment cannot be 'conceded' for want of opposition." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). "The burden is always on the movant to demonstrate why summary judgment is warranted," and "[t]he nonmoving party's failure to oppose summary judgment does not shift that burden." *Id.* (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring)). Thus, this Court cannot "grant a motion for summary judgment as conceded without considering the issues on the merits." *Habliston v. FINRA Dispute Resolution, Inc.*, — F. Supp. 3d —,No. 15-2225, 2017 WL 1906584, at *3 (D.D.C. May 8, 2017) (citing *Winston & Strawn*, 843 F.3d at 506–08). "The court may, however, treat any unaddressed factual statement in the defendant's motion as undisputed." *Koch v. White*, 12-cv-1934, 2017 WL 1655185, at *4 (D.D.C. May 2, 2017) (internal citations omitted); *see also United States v. Mohammad*, 15-cv-514, 2017 WL 1403144, at *4 (D.D.C. Apr. 19, 2017) ("[n]otwithstanding a non-movant's persistent refusal to respond to a motion for summary judgment, courts may accept as true any factual assertions submitted by the movant in support of its motion, unless the non-movant submits his or her own evidence showing the movant's assertions are untrue."); LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

## IV. ANALYSIS

Mr. Johnson alleges that NASA retaliated and discriminated against him by "depriv[ing] [him] of equal employment opportunities in promotion, salary, and other terms and conditions of his employment," and also denied him "equal pay, equal performance bonuses, and equal promotional opportunities in comparison to . . . similarly-situated women." Compl. ¶¶ 37, 39, 43, 47. However, he has failed to respond to Defendant's motion for summary judgment despite having been given ample opportunity to do so. Consequently, the Court will evaluate the Defendant's motion in light of the standard for summary judgment and based on the record and the facts deemed to be undisputed. Doing so, the Court finds that Defendant is entitled to summary judgment on Mr. Johnson's Title VII and ADEA claims and that the Court lacks subject-matter jurisdiction as to his EPA claim.

### A. Age Discrimination, Sex Discrimination, and Retaliation Claims

First, the Court finds that Defendant is entitled to summary judgment on Mr. Johnson's age discrimination, sex discrimination, and retaliation claims. The ADEA and Title VII together prohibit the federal government and other employers from taking adverse employment actions based on an employee's age, race, color, religion, sex, or national origin, 42 U.S.C. §§ 2000e–2(a), 2000e–16(a); 29 U.S.C. §§ 621 *et seq*, and forbids those employers from retaliating against employees who make a "charge" or "oppose[] any practice made an unlawful employment practice" under the Acts, 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d); *see also Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015) (Title VII); *Forman v. Small*, 271 F.3d 285, 296 (D.C. Cir. 2001) (waiver of federal sovereign immunity in ADEA extends to retaliation claims). To establish a prima facie discrimination claim, a plaintiff must demonstrate that he suffered an adverse employment action because of his age, race, color, religion, sex, or national origin. *See*

*Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). To prove unlawful retaliation, a plaintiff must establish that (1) he made a charge or opposed a practice made unlawful by Title VII or the ADEA, (2) that the employer took a materially adverse action against him, and (3) that the employer took that action because of his protected conduct. *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006) (Title VII); *Tomasello v. Rubin*, 167 F.3d 612, 619 (D.C. Cir. 1999) ("[T]he test for determining retaliation under the ADEA and Title VII is identical."). However, once a defendant has offered a legitimate, non-discriminatory, non-retaliatory reason for its actions, the Court is only to consider whether "'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (quoting *Brady*, 520 F.3d at 493) (brackets omitted).

Here, Mr. Johnson alleges that NASA refused to promote him because of his age, sex, and prior EEO activity.[3] *See* Compl. ¶¶ 37, 42–43, 47–48. NASA claims that it did not promote Mr. Johnson "because he routinely failed to produce satisfactory work in a timely fashion." Def.'s Mot. at 9. As the courts in this circuit have repeatedly held, this kind of performance-based reason represents a legitimate, non-discriminatory, non-retaliatory reason for adverse

---

[3] Although Mr. Johnson also seems to allege that he was subject to disparate pay because he is a man and because of his prior EEO activity, *see* Compl. ¶¶ 39, 43, 47–48, it is not clear from the Complaint or any other record evidence how, if at all, this claim is distinct from his failure-to-promote claim. Indeed, a review of the record reveals that there is no evidence that similarly situated women or others without EEO activity received better compensation, or any evidence, apart from his non-promotion, that supports the notion that NASA took any action to adversely affect Mr. Johnson's pay. Thus, the Court considers this "disparate pay" claim to be synonymous with his failure-to-promote claim. However, even if the Court were to consider it standing alone, the Court would find that no reasonable jury could conclude that NASA paid Mr. Johnson less for discriminatory or retaliatory reasons due to the dearth of evidence in the record.

9

employment actions, such as non-promotion.[4] *See, e.g.*, *Johnson v. Vilsack*, 815 F. Supp. 2d 221, 234 (D.D.C. 2011); *Milliner v. Dist. of Columbia.*, 932 F. Supp. 345, 351 (D.D.C. 1996); *Green v. Kinney Shoe Corp.*, 728 F. Supp. 768, 773–74 (D.D.C. 1989). The undisputed record, including sworn declarations from Mr. Johnson's respective first- and second-level supervisors, supports NASA's assertion of Mr. Johnson's poor performance. For example, Mr. Johnson's first-level supervisor, Linda Jackson, attested that Mr. Johnson failed to "take [] initiative in his work" and frequently submitted work with "sloppy errors" and "analytical mistakes." *See* Jackson Aff. ¶ 14, ECF No. 13-5; *see also* Manuel Aff. ¶¶ 12–13 ("There were [ongoing] issues with [Mr. Johnson] completing the FADs in a timely manner, and there were problems with the quality of his work," specifically "many of [Mr. Johnson's] decisions were returned citing errors"). Moreover, even though Mr. Johnson "was given career enhancing assignments," he failed to complete them. Jackson Aff. ¶ 15. Indeed, he was given leadership of one such project in 2008 called the "Contingent Worker Desk Guide," but he failed to complete that project even by 2010 when he retired. *See* Jackon Aff. ¶ 15; *see also* Manuel Aff. ¶ 17. According to Ms. Jackson, getting Mr. Johnson to move that project along was "like pulling teeth." Jackson Aff. ¶ 15. As a result of all of this, Mr. Johnson "routinely received performance reviews identifying the need for improved written skills and timeliness." Def.'s Statement Facts ¶ 28, ECF No. 13-2. During these discussions, Ms. Jackson "talked to him about what he needed to do to be promoted

---

[4] The Court notes that similar claims from Mr. Johnson in a previous lawsuit against NASA have already been rejected on the grounds of poor job performance. *See Johnson v. Bolden*, 699 F. Supp. 2d 295 (D.D.C. 2010). In that case, "Mr. Johnson claimed that he and other male employees were treated 'unfairly' and were improperly denied bonuses." Def.'s Mem. at 10 (citing *Johnson*, 699 F. Supp. 2d at 298). However, NASA presented as a legitimate, non-discriminatory basis for its actions the "prevailing view among management officials that deficiencies in [Mr. Johnson's] performance were affecting the quality of his work product and, as a result, the amount of bonus that he would receive." *Johnson*, 699 F. Supp. 2d at 300. The Court granted summary judgment in NASA's favor. *Id.* at 302.

and how he needed to improve his performance" before a promotion would be appropriate. Jackson Aff. ¶¶ 9, 19. Overall, Mr. Johnson's supervisors believed he "was not showing that he could perform at a higher level." Jackson Aff. ¶ 14; *see also* Manuel Aff. ¶¶ 12, 13, 18 (Mr. Johnson "was not promoted due to performance issues" and because he "was not performing at the GS-14 grade level"). "Thus, the only question before the court is whether [Mr. Johnson] has advanced sufficient evidence for a reasonable jury to find Defendant's stated reasons to be pretext for discrimination." *Koch*, 12-cv-1934, 2017 WL 1655185, at \*10.

Having not responded to the motion for summary judgment, Mr. Johnson has not carried that burden. Although Mr. Johnson makes various allegations of discrimination and retaliation throughout his Complaint, he cannot rely on those alone to rebut Defendant's legitimate, non-discriminatory, non-retaliatory reason for not promoting him. *Grimes v. Dist. of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) ("[I]t is well established that [a plaintiff] cannot rely on the allegations of her own complaint in response to a summary judgment motion[.]"). In this case, the record contains no evidence of discriminatory or retaliatory statements, no evidence that there is any inconsistency in Defendant's stated reasons for non-promotion, or any evidence to demonstrate that his supervisors' assessment of his performance was either dishonest or unreasonable. *See Allen*, 795 F.3d at 41 (D.C. Cir. 2015) ("'If the employer's stated belief about the underlying facts is reasonable in light of the evidence,' and is honestly held, there ordinarily is no basis to put the case to a jury, even if the employee disagrees with the discretionary decision the employer made." (quoting *Brady*, 520 F.3d at 495)).

Mr. Johnson does attempt to raise the specter of discrimination and retaliation by alleging that Ms. Moore was given more favorable treatment than he was. Mr. Johnson makes much of the fact that Ms. Moore, a women who was under the age of forty with no prior EEO activity,

was later promoted to GS-14 while he was not. The D.C. Circuit has held that "show[ing] that similarly situated employees of a different [sex or age or employees who had not engaged in protected activity] received more favorable treatment" is "[o]ne way to discredit an employer's justification." *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 145 (D.C. Cir. 2008) (citing *Brady*, 520 F.3d at 495). But for two employees to be similarly situated, "all of the relevant aspects of [the] employment situation" must be "nearly identical." *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (internal citations and quotations omitted). Although Ms. Moore and Mr. Johnson had similar duties, the record and undisputed facts reveal that there is a significant difference in terms of their performance. Indeed, unlike Mr. Johnson, Ms. Moore's supervisors found that she "performed at [a] distinguished level" and it is undisputed that she completed several office-wide projects on top of her delineated responsibilities. Def.'s Statement Facts ¶¶ 36, 38; *see also* Jackson Aff. ¶¶ 8, 20–21 (highlighting Ms. Moore's superior performance which warranted her promotion); Manuel Aff. ¶¶ 15, 17, ECF No. 13-7 (same). Thus, they believed she was "ready to move to, and perform work at, the next grade level." Def.'s Statement Facts ¶ 38. Mr. Johnson simply offers no evidence to demonstrate that he and Ms. Moore performed at a comparable level. Therefore, Ms. Moore does not represent a "similarly situated" employee and her promotion does not give rise to an inference of discrimination or retaliation necessary to rebut Defendant's legitimate, non-discriminatory, non-retaliatory reason for not promoting Mr. Johnson. *See e.g., Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (plaintiff was not similarly situated to colleague where employer viewed the "unrelated criticisms" of colleague as "less serious" than the criticisms of plaintiff); *Kline v. Springer*, 602 F. Supp. 2d 234, 240 (D.D.C. 2009) (holding that plaintiff's colleagues were not similarly situated, in part, because "plaintiff failed to show that

her performance was similar to theirs"). Furthermore, Mr. Johnson does not identify, and the record does not reveal, any other employee who was similarly situated to him, yet who was treated more favorably.

In short, the current record before the Court does not support the notion that NASA's performance-based reasons for not promoting Mr. Johnson were pretext for discrimination or retaliation. Thus, Defendant is entitled to summary judgment on Mr. Johnson's age discrimination, sex discrimination, and retaliation claims.

### B. Equal Pay Act Claim

Although NASA also seeks summary judgment on Mr. Johnson's EPA claim, the Court cannot reach these arguments because it lacks subject-matter jurisdiction to adjudicate the claim. *See Hunter v. Rice*, 480 F. Supp. 2d 125, 130–31 (D.D.C. 2007) (declining to grant summary on EPA claim because it lacked subject-matter jurisdiction, noting that "the proper course of action is to dismiss the claim . . . [or] to transfer it to a court that does have jurisdiction, not to grant a motion for summary judgment"); *Kirkham v. Societe Air France*, 429 F.3d 288, 293 (D.C. Cir. 2005) ("Seeking summary judgment on a jurisdictional issue . . . is the equivalent of asking a court to hold that because it has no jurisdiction the plaintiff has lost on the merits. This is a nonsequitur.") (quoting *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987)). This Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). If the Court finds that it lacks jurisdiction over a civil action, the Court may, in the interest of justice, transfer that action to another court where it could have been brought at the time it was filed. *See* 28 U.S.C. § 1631. Otherwise, it must dismiss.

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). It is the plaintiff's burden to establish that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992). To determine whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

The EPA, 29 U.S.C. § 206(d), which is part of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, prohibits discrimination in rates of pay paid to employees on the basis of gender. The purpose of the EPA is to ensure that employees of both sexes are paid equally for the same job. Thus, the EPA prohibits employers from differentiating on the basis of sex by paying employees of one sex lower wages than employees of the other sex for performing a job requiring equal skill, effort, and responsibility, under similar working conditions. 29 U.S.C. § 206(d).

Courts in this circuit have consistently held that claims against the United States brought pursuant to the EPA, or the FLSA more generally, must satisfy the jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491, or the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *See e.g., Doe v. Dep't of Justice*, 753 F.2d 1092, 1101 (D.C. Cir. 1985); *Waters v. Rumsfeld*, 320 F.3d 265, 271–72 (D.C. Cir. 2003); *Hunter v. Rice,* 480 F. Supp. 2d 125, 131 (D.D.C. 2007); *Powell v. Castaneda*, 390 F. Supp. 2d 1, 7 (D.D.C. 2005); *Weber v. Hurtgen*, 297 F.Supp.2d 58, 62 (D.D.C. 2003); *De Leon v. England,* No. 02-cv-0473, 2003 WL 21767504, at *2 (D.D.C. Feb.

20, 2003). The Tucker Act provides that the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress . . . not sounding in tort." 28 U.S.C. § 1491(a)(1). The Little Tucker Act, however, gives federal district courts concurrent jurisdiction over non-tort civil actions against the United States for claims "not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . . ." 28 U.S.C. § 1346(a)(2). Accordingly, the D.C. Circuit has held that "the Court of Federal Claims has exclusive jurisdiction to adjudicate" all "FLSA claims in excess of $10,000" and, unless a plaintiff waives his claims in excess of $10,000, "the district court [is] without jurisdiction to rule on their merits."[5] *Waters*, 320 F.3d at 272; *see also Adair*, 191 F. Supp. 3d at 134

---

[5] NASA states that it does not "contest this Court's jurisdiction to hear Johnson's EPA claim" and cites the Supreme Court's decision in *United States v. Bormes*, 133 S. Ct. 12, (2012) as support for its position. Def.'s Mot. Summ. J. at 12 n.5. Nevertheless, as noted above, the Court has a *sua sponte* obligation to ensure that it indeed has subject-matter jurisdiction under the Constitution and statute. *Maldonado-Torres v. Mukasey*, 576 F.Supp.2d 57, 58 (D.D.C. 2008) (citing *Doe by Fein v. Dist. of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996)). In *Bormes*, the Supreme Court held only that the Little Tucker Act did not waive the sovereign immunity of the United States with respect to claims under the Fair Credit Reporting Act ("FCRA") because the FCRA represented a "detailed remedial scheme," including "precisely defin[ing] the appropriate forum" for litigation, and therefore "only [that statute's] *own* text can determine whether the damages liability Congress crafted extends to the Federal Government." *Bormes*, 133 S. Ct. at 15, 19 (internal quotations and citations omitted). In contrast, "Congress unmistakably provided for judicial imposition of monetary liability on the United States for FLSA violations" and the FLSA "does not specify a forum that is contrary to that specified by the Tucker Act." *Abbey v. United States*, 745 F.3d 1363, 1370 (Fed. Cir. 2014); *see also Zumerling v. Devine*, 769 F.2d 745, 749 (Fed. Cir. 1985) (the FLSA "require[s] one to look elsewhere to find out what court, if any, has jurisdiction."). Accordingly, having "so plainly [] authorized damages suits against the United States, it is natural to read the [FLSA] as implicitly specifying a forum (the Tucker Act forum) in order to complete the waiver of sovereign immunity, given the background principle that waivers of sovereign immunity are generally tied to particular courts." *Abbey*, 745 F.3d at 1370 (internal citations omitted); *id* ("[G]iven that, in the FLSA, Congress plainly meant to subject the United States to damages suits for violation . . . , the fairest reading of [the FLSA] is that it affirmatively invokes the forum specification for those damages suits found outside the four corners of the FLSA" and "[t]he Tucker Act is the only available specification that has been identified."). In short, the Court agrees with the Federal Circuit and other courts that *Bormes*

15

("[B]ecause these plaintiffs do not waive their [FLSA] claims in excess of $10,000, . . . this Court lacks jurisdiction to resolve the matter."); *Powell*, 390 F.Supp.2d at 7 (holding that the district court lacked subject-matter jurisdiction over plaintiff's EPA claims, which sought more than $10,000 in damages); *Weber*, 297 F.Supp.2d at 62 ("In light of [plaintiff's] damages [for compensatory and back pay losses, which amounted to more than $10,000], the Court lack[ed] jurisdiction and transfer[red] the EPA claim to the Court of Federal Claims.") (citation omitted); *De Leon*, 2003 WL 21767504, at *2 (transferring plaintiff's EPA claims to Court of Federal Claims, "the only court in which the claim could have been properly brought"). As a result, this Court's jurisdiction to adjudicate Mr. Johnson's EPA claim necessarily turns on the amount of damages Mr. Johnson is seeking and whether he has waived any damages amounts above $10,000.

Mr. Johnson seeks compensatory damages, including "back pay, wages, and benefits in an amount to be shown at trial," however, he does not identify any precise amount. Compl. at 8–9. Nevertheless, Mr. Johnson does make clear in his Complaint that "the amount in controversy exceeds $10,000." Compl ¶ 3. Moreover, upon reviewing the Complaint, the Court can discern no waiver of any amounts over $10,000—a waiver which the D.C. Circuit has held "must be 'clearly and adequately expressed.'" *Waters* 320 F.3d at 271 (quoting *Goble v. Marsh*, 684 F.2d 12, 17 (D.C. Cir. 1982)). Therefore, the Court must conclude that it lacks subject-matter jurisdiction over Mr. Johnson's EPA claim. Given Mr. Johnson's persistent failure to respond to NASA's motion, the Court believes that the most appropriate course of action is to dismiss the EPA claim without prejudice. *See Powell*, 390 F. Supp. 2d at 7 (dismissing EPA claim where

---

does not disturb longstanding precedent that the Court of Federal Claims has exclusive jurisdiction over FLSA and EPA claims against the United States for damages exceeding $10,000. *See e.g.*, *Abbey* at 1368–72; *Adair*, 191 F. Supp. 3d 129.

"plaintiff [] conceded that she seeks more than $10,000 in damages because she does not counter the defendant's EPA argument.").

## V.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Defendant's Motion for Summary Judgment is **GRANTED** as to Mr. Johnson's Title VII and ADEA claims, but **DENIED** as to Mr. Johnson's EPA claim. It is **FURTHER ORDERED** that Mr. Johnson's EPA claim is dismissed without prejudice for want of subject-matter jurisdiction. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 10, 2017                                                                RUDOLPH CONTRERAS
                                                                               United States District Judge